# CHARLESTON.

STATE *ex rel.* TOWNSEND, STATE TAX COMMISSIONER, *v.* THE
BOARD OF EDUCATION.

Submitted October 18, 1910.    *Decided October 20, 1910.

1.  SCHOOLS AND SCHOOL DISTRICTS—*Taxation—Statutory Provisions.*
    The proviso incorporated in section 21 of chapter 27 of the
    Acts of 1908, as an amendment, by chapter 90 of the Acts
    of 1909, authorizing the board of education of any district

---

which contains an incorporated city or town where a graded or high school is maintained, which is continued for a longer period than six months, to lay a levy in addition to the general levies in said section provided for, sufficient for all purposes to conduct the schools of said city or town for the term fixed, applies to independent school districts in which such graded and high schools are maintained.

2. SAME.

When necessary to accomplish the purposes of said proviso, such additional levy may include provision for the enlargement of the school .buildings of such city or town, or the erection of additional new buildings therefor; but said provision con-templates relief only in cases of immediate necessity, not mere convenience nor future exigencies.

3. STATUTES—*Construction—Statutes Delegating Power to Taxa-tion.*

Statutes, delegating the power of taxation, fall under the strict rule of interpretation, but this rule does not authorize the courts to place a construction or interpretation upon them, so narrow as to withhold or deny powers plainly given.

*Mandamus* by the State, on relation of T. C. Townsend, State Tax Commissioner, against the Board of Education of the School District of Parkersburg, and others.

*Writ Refused.*

*T. C. Townsend* and *William G. Conley,* Attorney General, for petitioner.

*V. B. Archer,* for respondent Board of Education.

POFFENBARGER, JUDGE:

Charging illegality in the levy for building purposes, laid by the board of education of the independent school district of Parkersburg, for the current year, the State Tax Commissioner seeks a peremptory 'writ of *mandamus,* to compel said board to lay a legal and proper levy.

The question of legality in the levy turns upon the inter-pretation of a certain proviso in section 21 of chapter 27 of the acts of 1908, as amended and re-enacted by chapter 90 of the acts of 1909. That section limits the general levy for build-ing purposes, after the year 1908, to twelve and one-half cents on each one hundred dollars of valuation. An amount in addi-

tion thereto sufficient to pay the interest on any outstanding bonds, and so much of the principal as is required to be paid in the year for which the levy is laid, may be raised also. As a levy for the principal and interest of bonds can be used for no other purpose, this provision may be left out of consideration, and twelve and one-half cents on the one hundred dollars accepted as the limitation. The proviso in question allows an additional levy for certain purposes, in certain districts under certain circumstances. It reads as follows: "Provided, however, that in any district which contain an incorporated city or town where a graded or high school is maintained, which is continued for a longer period than six months, the board of education shall have authority to lay a levy in addition to the levies above specified sufficient for all purposes to conduct the schools of said city or town for the term fixed."

The first and most important contention is, that this proviso is inapplicable to independent school districts, for the reason that "district," as used in our statutes, relating to education, ordinarily means the magisterial district, which, under the general law, in the absence of any special provision, constitutes a school district for which a board of education is provided. Independent school districts are the creatures of special statutes, by which certain areas are carved out of the general districts, for the purpose, and separate boards of education created for the management of the schools therein. Section 161 of chapter 27 of the Acts of 1908, providing that "The words used in this chapter and in any proceedings pursuant thereto, shall, unless the context clearly indicates a different meaning, be construed as follows: * * * district shall not mean independent district," is relied upon as emphasizing this argument.

It is also supplemented by reference to certain graded and high schools which magisterial district boards of education are authorized to establish, as being the kind of graded and high schools the legislature had in view, when it inserted this clause. Section 28 of chapter 27 of the Acts of 1908 authorizes the board of education of any district in which there is a town, village or densely populated neighborhood, having two or more schools in the same building, to establish a graded school therein, and also to establish a high school, if there are four

or more schools in the same building; and section 30 of said chapter authorizes the establishment of a high school in any district by a three-fifths vote of the voters of the district, voting upon the question, under a submission thereof by the board. To such graded and high schools the pupils of the entire district are admissible. Such schools are undoubtedly within the meaning of this clause, provided they are continued for more than six months and located in incorporated cities or towns, and it is insisted that no other graded or high schools are contemplated by it. Section 161 of the chapter defines graded and high schools, but that chapter does not authorize the creation of any such schools, otherwise than in the manner and under the circumstances stated. As there is nothing in sections 28 and 30 to broaden the meaning of the term "district," it is almost certain that these sections are applicable only to boards of education of magisterial districts. If nothing more appeared, the position of the relator would be very strong, if not, indeed, impregnable.

It is to be observed, however, that many of the special acts. creating independent school districts, provide for the grading of the schools therein, either in express terms, or by the vesting of liberal powers in the boards of education which permit them to grade the schools. The special act, creating the Independent School District of Parkersburg, expressly authorizes the board of education to maintain high schools and evening schools, and requires it to establish a system of grades by which admission to the high schools shall be regulated. The independent school district boards of education and the levies to be laid by them, as well as the magisterial district boards of education and the levies to be laid by them, constitute parts of the subject matter of section 21 of chapter 27 of the Acts of 1908, as said section has been amended and re-enacted. This being true, may not the graded and high schools of these independent school districts be included in the proviso along with graded and high schools, established by magisterial district boards? This depends upon the meaning of that clause, considered as a part of the section and in the light of its terms and provisions and those of the general law, already referred to. They are of the class of schools mentioned, differing from others of the class only in respect to the kind of districts in which they are.

The opening clause or paragraph of said section 21 says "it shall be the duty of the board of education of such district or independent district, at a meeting to be held on the second Tuesday in August, to ascertain the condition of the fiscal affairs of the district and make up an itemized statement thereof." It then proceeds to designate what shall be shown in that statement and what shall be done by these boards of education, referring to them and their districts always by the singular terms "district," "board" and "board of education," in the manner in which the word "district" is used in the quotation above, where it undoubtedly refers to both classes of districts and means either of them. In this way, the term "district" is used at least eight times before the first proviso is reached and the term "board" at least six times. The first proviso does not use any of these words or any other to designate a district or board. The next proviso is the one in question and it uses the terms "any district," following the mode of deseignation, adhered to throughout the whole section down to that point, from the opening paragraph, for both classes of boards of education. If the legislature, instead of doing that, had used the terms "district and independent district" to indicate both, when both were intended, and "district" when the magisterial district was intended, and "independent district" when that kind of district was intended, down to this proviso, there could be no doubt that the term "any district," used in it, would limit the reference to a magisterial district. But, as the word "district" has been used over and over in the section for both classes, and that mode of designation was never interrupted or discontinued before this proviso was reached, there can be no doubt that it is used here, as in all these other instances, to include both. That it does include both in the other instances is not only plain, but necessary to the effectuation of the legislative intent. Otherwise, there would be no limitation upon the powers of boards of education of independent school districts in respect to the amount of money they can raise by taxation. As it includes both in all those cases, why not in this? What is there to distinguish it, or indicate that it is used here in a sense different from that in which it is used in that portion of the section which immediately precedes it and stands in juxtaposition with it? If all that goes before, comes right up to, and hitches on

to, this clause, is not to be considered as its context, casting light upon the meaning of its terms, I have misconceived the definition of the word "context," used in section 161 of the chapter. As there is no classification of graded and high schools, for the purposes of this clause, and both classes of boards of education have legally constituted graded and high schools under their supervision, and the word "district," as used in it, includes both classes of districts, we are clearly of the opinion that this additional levy is intended, when necessary, for the support of all graded and high schools, maintained for more than six months in incorporated cities and towns.

. The defendant laid a levy of eighteen cents on each one hundred dollars for building purposes, which is five and one-half cents above the ordinary limit. This addition was intended to cover the cost of erecting new school buildings or the completion thereof. In said section 21, as amended and re-enacted, another new provision was inserted, authorizing the state superintendent of schools to make a requisition upon the auditor for a sufficient sum out of the general school fund, not exceeding fifteen thousand dollars in any one year, for the purpose of supplementing the building funds of districts, in which a levy of twelve and one-half cents is not sufficient to meet all the outlay for necessary expenses for the school year, properly chargeable to the building fund, such as repairs, fuel, janitor service and institute per diem, not including the purchase of land or the erection of new buildings. This provision is expressly applicable to both districts and independent districts. It is contended here that the defendant may avail itself of this fund, if a twelve and one-half cent levy is sufficient for its building expenses for this year, and that, inasmuch as it may do so, it can not lay an additional levy for building purposes, no authority being given anywhere, in terms for additional money for the erection of new buildings. This provision and the other clause in question were inserted in the section at the same time. It is altogether probable that a board of education can not avail itself of both. Likely such as may claim the benefit of the provision for an additional levy are impliedly excepted from the provision for supplementing the building fund, in cases in which sufficient money can not be raised by the ordinary levy of twelve and one-half cents. The provisions ought to be so con-

strued as to harmonize with one another. The instances in which the additional levy is available are limited by the terms of the proviso. It can only be had for graded and high schools, maintained in incorporated cities and towns for more than six months. It can not be laid in the numerous magisterial districts in which there are no such graded or high schools, and in some of which the property valuations are comparatively low. No doubt the draftsman of these two amendments had in his mind a comprehensive system or plan for supplementing the levies of all classes of boards of education, in all those instances in which there would probably be necessity for additional money. It is altogether improbable that either he or the legislature intended any conflict between the two provisions of the plan, or any duplication or cumulation of relief. The first measure provides relief for certain graded and high schools. This impliedly negatives any other supplementary relief for them. *Expressio unius est exclusio alterius.* This having been done, there remained a large number of other schools, likely to suffer from deficiencies in building funds, for which provision should be made. Hence the occasion for the second measure of the supplementary plan, applicable, as a rule, only to the country districts, needing smaller amounts of money, and yet less able to bear an additional tax than the comparatively wealthy incorporated cities and towns or districts containing them. We are of the opinion, therefore, that the supplementary fund from the state treasury is not available for the schools mentioned in the proviso, now under consideration, even if right in them to resort thereto would deny them right to relief by means of an additional levy.

The inhibition upon the use of the supplementary fund from the state treasury for the purchase of land and erection of new buildings is relied upon and urged here, as disclosing a legislative policy of hostility to the purchase of land and erection of buildings with funds arising from a mere supplementary levy. This contention is, that express prohibition of such use of one supplementary fund raises an implied prohibition in respect to the other. Express terms are not often rendered nugatory solely by a mere implication and never by an unnecessary one. This proviso says the board of education shall have authority to lay an additional levy sufficient for all purposes to conduct

the schools of said city or town for the term fixed. If this contemplates an additional levy for the building fund only, as is contended by the relator and admitted at the bar by the attorney for the respondent, the phrase· "for all purposes" is very broad and significant. It necessarily means for all building fund purposes, among which are the purchase of lands and erection of buildings. If the clause is applicable to both building and teachers funds, a question we do not decide, since there is no additional levy for the teachers fund, there might be ground for the contention that the word "all" should be read "both," there being two, and only two, statutory classes of funds; but this would be very technical and fall short of the plain and ordinary signification of the terms actually used. The restriction would have to arise *ex necessitate,* or from legislative intent, disclosed by the context. The court can not arbitrarily limit it. It is well to remember also the considerations upon which the legislature may be supposed to have made its classification of districts and schools for purposes of supplementary relief. In the country districts, a sudden and large increase of population and taxable wealth, incident to the growth and development of cities and towns, imperiously demanding enlargement of old school buildings and the erection of new ones, does not often occur; and, when it does, it naturally and inevitably brings into existence "a town, village or densely populated neighborhood" in each district, most of which are incorporated, which enables the board of education thereof to establish graded and high schools and claim the benefit of the ad-. ditional levy provision, under circumstances, rendering new buildings necessary. It alters the character of the district, making a portion of it urban and incorporated instead of rural. Thus the legislature may have seen probable necessity for such expenditures, in respect to one class of schools, and none in respect to the other, and framed its two measures of supplementary relief accordingly. Giving effect to the phrase "for all purposes," according to the ordinary meaning of its terms, agreeably to the rules of construction, and finding it to be in conformity with a reasonable and plausible theory, made manifest for the general purpose of the two clauses, inserted in the section by way of amendment, we are of the opinion that it

includes expenditures for new buildings, when necessary to carry on the schools of the class specified for the term fixed.

We are also of the opinion that the respondent has shown a necessity for such an expenditure. The return, verified by oath, shows an overcrowded condition of the school buildings, detrimental to the interests of the pupils, and an utter lack of room for at least 500 pupils, bound by the compulsory provisions of the law to attend school. According to the return. this vast number of school children, entitled to the benefit of the school funds to which their parents have contributed as taxpayers, and required by law to avail themselves of it, are not in school and can not be admitted because of lack of room. for them in the school buildings. In law, they constitute a part of the schools and the provision of additional school rooms is necessary to the conduct of the school for the term of ten months fixed—necessary for this year. Without such provision, the school can not be so conducted as to include these 500 pupils as the law contemplates. That the new buildings will be permanent and the benefit of this expenditure extend to future terms and years is a mere incident or sequence, not excluded by any terms used in the clause. If this were an insuperable objection to the allowance of the expenditure, it would exclude black-boards, repairs to plumbing and heating apparatus, stairways, walks and many other things, which it is apparent the legislature could not have intended to exclude. The suggestion of intent that such exigencies as the one disclosed here should be met by the renting of rooms or some other temporary expedient utterly fails for the obvious reason that such means are not always available. Whether relief of that kind could be provided in this instance is not shown. What its effect would be, if it had been disclosed, we are not called upon to say.

Lest the effect of this decision and the grounds upon which it stands may be misapprehended, however, we observe that necessity for the maintenance and reasonable efficiency of the schools for the single term of the year in which it is laid, is the only justification of such an additional levy. It can not be laid merely for future purposes, nor in an amount beyond reasonable necessity for a present exigency.

We have nothing to do with the wisdom or folly of this

legislation. That was a question for the legislature. It is the province of courts to ascertain and declare, not what the legislature should or should not have done, except in those cases in which it is said to have exceeded its powers, but only what it has or has not done.

Acts, delegating the power of taxation, such as this, fall under the rule of strict construction, but that rule does not authorize the courts to withhold what has been plainly granted by the terms used nor to restrain the meaning of such terms for the purpose of withholding the power, when no sound reason therefor, found in the legislation itself or in some firmly established principle of public policy, can be discerned.

For these reasons, the peremptory writ, prayed for, will be refused.

*Writ Refused.*